**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **KINGSTON OSBORNE and DAVID SMITH, individually and as representatives of the collective of plaintiffs described herein,**<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**OUTOKUMPU STAINLESS USA, LLC,**<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　CASE NO.: 24-cv-439<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Kingston Osborne and David Smith, on behalf of themselves and the collective of similarly situated plaintiffs described below pursuant to 29 U.S.C. § 216(b) (collectively "Plaintiffs"), bring this action against Defendant Outokumpu Stainless USA, LLC ("OTK"), seeking relief under the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. §§ 201, et seq.

### I.　JURISDICTION AND VENUE

1.　This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. §§ 201, et seq. and 28 U.S.C. § 1331.

2.　Venue is this Court is proper pursuant to 28 U.S.C. § 1391(b).

### II.　PARTIES

3.　Plaintiff Kingston Osborne has been employed as an hourly paid employee at OTK since 2014. At all times pertinent hereto, Mr. Osborne has been employed as a Logistics Operator.

4.　Plaintiff David Smith has been employed as an hourly employee at OTK since approximately 2011. At all times pertinent hereto, Mr. Smith has been employed as an Operator.

1

5. Defendant Outokumpu Stainless USA, LLC is a corporate entity registered to do business in Alabama. Defendant is subject to personal jurisdiction in the State of Alabama for the purposes of this lawsuit.

6. At all times material to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce as defined by § 203(s)(1) of the FLSA with annual gross sales on business done in excess of $500,000.00. 29 U.S.C. § 203(S)(A)(ii).

7. Defendant is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that moved in and/or were produced in commerce.

8. Defendant is an employer covered by the record-keeping, minimum wage, and overtime mandates of the FLSA.

9. Plaintiffs performed work for Defendant in Mobile County, Alabama as non-exempt, hourly, manufacturing "employees" of Defendant as "employee" is defined by § 203(e)(1) of the FLSA. All the factual allegations set out herein pertain to practices of Defendant at its Mobile County, Alabama facility.

10. Defendant is an employer that is required, pursuant to 29 CFR § 516.2(a), to maintain and preserve for each employee information and data identifying the regular hourly rate of pay for any workweek in which overtime compensation is due; and the basis of pay by indicating monetary amounts paid on a per hour, per day, per week, or other basis and the total wages paid for each pay period.

### III.    LEGAL BACKGROUND AND FACTS

**A. Legal Landscape for Overtime Compensation.**

11. Each week for which overtime pay obligations are based upon 29 U.S.C. § 207(a) stands alone and entitlement to overtime pay for a particular work week cannot be calculated based on averaging, or aggregating, hours worked in any other week for hourly exempt employees such as the Plaintiffs. At all relevant times, Defendant was aware that 29 CFR § 778.104 provides:

> The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis. The rule is also applicable to pieceworkers and employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by pieceworkers and commission employees on a weekly basis.

12. At all relevant times, Defendant was aware that 29 CFR § 778.105 provides that:

> An employee's workweek is a fixed and regularly recurring period of 168 hours - seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. The proper method of computing overtime pay in a period in which a change in the time of commencement of the workweek is made, is discussed in §§ 778.301 and 778.302.

B. **Facts Relating to OTK's Pay Practices.**

13. For the period after October 1, 2021, Plaintiffs were assigned an hourly rate of pay that generally applied to work performed from 6:00 a.m. – 6:00 p.m. For time worked between 6:00 p.m. and 6:00 a.m. an additional $.50 an hour premium was added to the rate of pay.

14. The Earnings Statements employees receive document overtime rates of pay with the number of hours quantified over periods of two weeks, or approximately two weeks.

15. Between October 1, 2021 – September 30, 2023, Defendant's Human Resources personnel were aware that Defendant was paying its hourly employees, including Plaintiffs, what Defendant characterized as overtime pay at rates that were less than 1.5 times the amount of compensation properly calculated for purposes of overtime pay due under the FLSA for work during 168-hour periods. The Earnings Statements Defendant had issued to its employees showed overtime pay rates that were less than 1.5 X the properly calculated rates of pay for work during 168-hour periods.

16. The overtime rates of pay for what Defendant characterized as overtime pay differ depending on whether Defendant chooses to classify time as "Overtime" or "Shift OT Hrs."

17. At all times pertinent hereto, up to September 30, 2023, Defendant did not know what formulas were actually used to calculate the overtime rates for pay to its hourly employees, such as Plaintiffs.

18. Defendant also maintained "Pay Summary" records for its employees, including Plaintiffs. Those Pay Summary records did not accurately document overtime rates of pay.

19. None of Defendant's business records document additions to Plaintiffs' pay that were "pre-payments" of overtime pay.

20. None of Defendants' business records document subtractions or deductions from Plaintiffs' pay to reflect any "pre-payments" of overtime pay.

21. Defendant had no intention of making pre-payments of overtime pay to Plaintiff during the time frame pertinent to this action.

22. From November 2021 through October 31, 2023, Defendant paid Plaintiffs a monthly incentive bonus every month or almost every month. The amount of the bonus was not included in the regular hourly rate from which the overtime pay rates were calculated. The bonus payments are not any of the types of payments excluded in 29 U.S.C. § 207(e)

23. The criteria for the amounts of monthly incentive bonuses were set in advance. When the criteria were changed, they were changed prospectively, not retroactively.

24. The temporal scope of the monthly incentive bonuses was monthly. The monthly incentive bonus criteria were quantified based on calendar monthly results for the entire facility. That monthly periods that began on the first of the month and ended on the last of the month.

25. The percentage amount depended on the criteria calculated based on results over a calendar month. During this time, Plaintiffs' entitlement to a monthly incentive bonus was not based on individual performance during a month. It was based on the performance of the entire facility as measured by pre-announced criteria.

26. After a month ended, the various criteria were individually accounted for. Defendant typically had all the information needed to calculate monthly incentive bonuses by the 15th of the month after the end of the month during which the bonus is earned. The bonus earned is stated as a percentage. The percentage was applied to the gross amount of pay received by the employee during the calendar month (not counting other monthly bonuses). Plaintiffs were paid

every two (2) weeks on Fridays. The percentage was applied to the gross amount of pay the employees earned during the calendar month.

27.     The calendar month that a monthly incentive bonus was earned was never the same time period as the 4 weeks (or sometimes 6 weeks) of previously received pay that the bonus percentage was applied to. The monthly incentive bonus paid at the end of a month (based on criteria for the prior month) was always applied to earnings from part of the month for which the criteria were considered, and also part of the month before that.

28.     Under the FLSA, Plaintiffs were entitled to be paid for hours worked in excess of 40 hours in each single 168-hour week at 1.5 times a regular hourly rate which included the monthly bonus payment and other all amounts required by 29 U.S.C. § 207. From November of 2021 through October 31, 2023, Defendant did not include in the regular rates from which overtime pay was calculated the monthly bonus payments. All amounts are required to be included under 29 U.S.C. § 207, and Plaintiffs were paid less overtime pay than the FLSA requires.

29.     Under the FLSA, Plaintiffs were entitled to be paid for hours worked in excess of 40 hours in each single 168-hour week at 1.5 times a regular hourly rate which did not include time or pay from any period other than that single 168-hour week.

30.     Under the FLSA, Plaintiffs were entitled to be paid for hours worked in excess of 40 hours in each single 168-hour week at time and a half a regular hourly rate properly calculated by taking the total of all amounts required by 29 U.S.C. § 207 be included in the regular rate divided by hours worked within that single 168-hour week. Through October 31, 2023, Plaintiffs were paid overtime for some 168-hour weeks at rates less than the FLSA requires.

31.     Defendant's failure to pay Plaintiffs the compensation, including overtime pay, to which they were entitled under the FLSA as alleged herein was willful, intentional, unreasonable, and not in good faith, as set forth below.

### C. **Despite Court Rulings Against it, OTK Has Continued its Practices.**

32.     The practices complained of herein as to improper calculation of overtime pay had been going on for some time and, on information and belief, were not remedied until October 31, 2023, or thereabouts.

33.     OTK was sued regarding the payment of overtime related to bonus calculations and the payment of overtime at rates lower than the FLSA requires in an action styled Hornady, et. al. v. Outokumpu Stainless USA, Civil Action No. 18-CV-317-CG-N, in the United States District Court for the Southern District of Alabama ("Hornady"). Ultimately, the Hornady case resulted in a default judgment in favor of the plaintiffs and against OTK in the amount of $13,171,958.56.

34.     The Hornady trial court made rulings that informed Defendant that as a matter of law, the practices complained of herein violate the FLSA.

35.     In the Trial Court in Hornady, Defendant moved for partial summary judgment asserting based on what it presented as undisputed facts that its bonus payments did not result in violations of the FLSA. In an Order dated February 24, 2021. That motion was denied by the trial court based on the authorities cited by Plaintiffs in that case, including the FLSA, applicable regulations, and applicable authorities. Defendant continued its bonus practices without change until October 31, 2023.

36.     In a ruling dated February 17, 2022, the Court stated that, "Defendant willfully violated the FLSA by failing to recalculate plaintiffs' regular hourly rate for the purposes of

7

calculating the overtime rate in violation of 29 U.S.C. § 207 (e)." Defendant continued its bonus practices without change until October 31, 2023.

37. In a ruling dated February 17, 2022, the Court explained that "Plaintiffs have sufficiently alleged Defendant's calculation of its percentage bonus does not achieve the same mathematical result as a recalculation of the regular rate, inclusive of the bonus amount, and subsequent overtime rate, on wages earned during the bonus period." Those allegations were consistent with the accurate sworn testimony of Defendant's Human Resources personnel. Defendant continued its bonus practices without change until October 31, 2023.

38. In a ruling dated October 4, 2022, the Hornady Court denied a Motion to reconsider its prior ruling as to whether the claims relating to pay for overtime stated a cause of action. Defendant continued its bonus practices without change until October 31, 2023.

39. The 11th Circuit Court of Appeals affirmed the Hornady trial Court as to the overtime claims, holding that the allegations, which are substantively identical to the allegations made herein, when assumed to be true, stated a claim for relief.

40. In addition to the rulings in Hornady, this Court, in the civil action styled Bradley Gibson v. Outokumpu Stainless USA, LLC, by Order dated March 22, 2023, ruled that OTK's bonus payments are "not reflected in" "the overtime pay from the period during which" they are earned and violate the FLSA. In the same order, the Court found that "Defendant's calculation of the RROP directly violates the FLSA" because it was calculated over a two-week period. Defendant continued its bonus practices without change until October 31, 2023.

**D. The Effect of Prior Litigation and a Change in Practices on the Classes Plead Herein.**

41. The Hornady Case was filed in 2018. The case was conditionally certified as a collective action, and proceeded to judgment on behalf of 275 opt-ins.

42. The claims of those opting in to the Hornady case have a cut-off date in November, 2021.

43. Because OTK, even after the judgment in the Hornady case, refused to remedy its FLSA violative pay practices, another collective action case was filed against it in November of 2021. That case is styled Callier v. Outokumpu Stainless USA, LLC, Case No. 1:21-CV-00521-JB-N, in the United States District Court for the Southern District of Alabama ("Callier").

44. The Callier case was conditionally certified as a collective action, and covers a period for opt-in plaintiffs through July 2, 2023.

## IV. COLLECTIVE ACTION ALLEGATIONS

45. Plaintiffs incorporate by reference, as set forth fully herein, paragraphs 1-44 above.

46. Plaintiffs bring this action pursuant to 29 U.S.C § 216(b) of the FLSA on their own behalf and on the behalf of all hourly-paid employees of Outokumpu Stainless USA, LLC in manufacturing positions in Calvert, Alabama since October 1, 2021, The claims in this civil action of any employees who opted into the Callier case or the Hornady case are limited to time periods for which damages were not sought, or awarded, in those other cases.

47. Excluded from the class are all the Defendants' executives, administrators, professional employees, and outside salespersons.

48. A collective action under the FLSA is appropriate because under 29 U.S.C. § 216(b), the workers described as parties to the Complaint are similarly situated to the named Plaintiffs.

49. The putative class members are similarly situated to the named Plaintiffs because they worked in the same facility, were subjected to the same unlawful practices, policies, or plans, and their claims are based upon the same factual and legal theories.

50. The working relationships between Defendant and every putative class member are the same. The key legal issue to collective action, i.e., whether Defendants' policies and practices violated the FLSA, does not vary substantially from class member to class member.

51. Plaintiffs estimate that the putative class, including both current and former workers over the relevant period, will include over 500 members. The precise number of the putative class members should be readily discernible from a review of Defendants' records.

## COUNT I
(Violations of the FLSA)

52. All preceding allegations are incorporated as though fully set forth herein.

53. Plaintiffs are employees fully entitled to the FLSA's protections.

54. Defendant is an employer covered by the FLSA.

55. The FLSA entitles employees to pay at 1.5 times the employee's regular hourly rate for hours worked in excess of 40 hours a week.  29 U.S.C. § 207(a).

56. By failing to pay for all hours worked in excess of 40 hours each 168-hour week at an hourly rate of at least 1.5 times an hourly rate calculated for each 168-hour week that included monthly bonus payments and all other compensation required for inclusion by 29 U.S.C. § 207 Defendant violated the FLSA's overtime pay mandate.

57. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

58. Plaintiff is entitled to recover for unpaid overtime compensation, liquidated damages, reasonable attorney's fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

    A.    A declaratory judgment that Defendant's wage practices alleged herein violate the FLSA, 29 U.S.C. § 201 *et seq*, and attendant regulations at 29 C.F.R. § 516 *et seq*.

    B.    An order directing Defendant, at its own expense, to investigate and account for the number of hours actually worked by Plaintiff for each workweek, and the hourly rates for each hour worked, the amount(s) paid for overtime for each workweek, and the rates of overtime pay.

    C.    Judgment for damages for all unpaid and/or underpaid compensation under the FLSA 29 U.S.C. § 201 *et seq.* and attendant regulations at 29 C.F.R. § 516 *et seq.* for the period since November 27, 2021.

    D.    Judgment for liquidated damages pursuant to FLSA 29 U.S.C. § 201 *et seq.* and attendant regulations at 29 C.F.R. § 516 *et seq.* in an amount equal to all compensation owed to Plaintiff under the FLSA for unpaid or underpaid compensation during the applicable statutory period.

    E.    Judgment for any and all civil penalties to which Plaintiff may be entitled.

    F.    An order directing Defendant to pay Plaintiff's reasonable attorneys' fees and all costs connected with this action.

    G.    Such other and further relief as to this Court may deem necessary, just, and proper.

**<u>PLAINTIFFS DEMAND TRIAL BY STRUCK JURY</u>**

Respectfully Submitted.

/s/ Brian M. Clark
Brian Clark
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Email: bclark@wigginschilds.com
Attorney for Plaintiffs

                    DAVIS, DAVIS AND ASSOCIATES, P.C.
                    By: /s/ *Ian D. Rosenthal*
                    Ian D. Rosenthal – ROSEI6905
                    27180 Pollard Road
                    Daphne, AL 36526
                    Telephone:  (251) 621-1555
                    Email: ian@ddalawfirm.com

**DEFENDANT WILL BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

**OUTOKUMPU STAINLESS USA, LLC**
**CORPORATION SERVICE COMPANY INC**
**641 South Lawrence Street**
**Montgomery, AL 36104**